OPINION OF THE COURT
Robert D. Gould, J.
THE CHARGE
The defendant is charged by information with having committed the class A misdemeanor of sexual misconduct, in viola *458 tion of section 130.20 (1) of the Penal Law, which provides, in pertinent part:
"A person is guilty of sexual misconduct when:
"1. Being a male, he engages in sexual intercourse with a female without her consent”.
He is more specifically charged with having engaged in sexual relations with his 15-year-old girlfriend who admitted to the voluntary sexual relations with defendant.
THE SALIENT FACTS
Defendant at the time of his arrest was 16 years old and was in his final year of high school at Margaretville Central School from which he graduated, at age 16, with a Regents diploma. Having been raised in a broken home from the age of three months, defendant had lived with his mother until he was 15 years old, at which time he was encouraged to leave, because of conditions in the home, by child protective services. Defendant then tried living with his father, but he could not abide by his father’s many rules and moved out. He rented a room with a family, doing chores, having use of the home and continuing high school. Defendant had two part-time jobs in order to support himself and is attempting to save money so he can attend college in the future. It was during his years in high school that he met his girlfriend and a relationship commenced. She stated that they saw each other in school, had some classes together and were tennis partners. She admits to having consented to a sexual relationship with defendant and stated that he was very kind and supportive, that she wished to continue to see him and that she would feel guilty if anything happened to him as a result of their relationship. It was at the girlfriend’s father’s urging that the criminal charges were brought against defendant. There is no dispute that the 15-year-old female could not consent to sexual intercourse solely by reason of her age. Defendant has no criminal history and this is his first arrest.
The defendant now moves, pursuant to CPL 170.40, to dismiss the charge against him, in the interests of justice, and on the ground that Penal Law § 130.20 (1) was unconstitutional in that it discriminates against males in violation of the equal protection guarantees of the New York and the United States Constitutions. (See, US Const, 14th Amend, § 1; NY Const, art I, § 11.)
In the People’s affirmation in opposition to the instant motion, Mr. Cannon makes a cogent argument concerning the *459 procedural defects in defendant’s presentation of his notice of motion to the court. While it would not be unreasonable to expect precision in defendant’s motion papers at this juncture, in the interests of justice, we must view defendant’s presentation in its entirety, putting substance over form, and incorporating all issues put before the court in this matter.
The procedural history of this action shows that prior to the instant written motion, defendant orally moved to dismiss the information on the basis that the statute under which defendant was arrested was unconstitutional and violated defendant’s equal protection rights. In support of her oral argument, defense counsel submitted a memorandum labelled "Brief in Support of the Motion”, the People responded by letter and formal motion, opposition and reply papers were served and filed with the court. It is noted that all of the papers discuss the constitutional issue.
CPLR 2001 permits the court to correct a mistake, omission, defect or irregularity "upon such terms as may be just”. Defendant’s counsel made it extremely clear to the People and the court that defendant was moving to dismiss on constitutional grounds. The court will therefore consider the constitutional issues.
DISCRIMINATORY GENDER SPECIFICITY
Penal Law § 130.20 (1) provides that:
"A person is guilty of sexual misconduct when:
"1. Being a male, he engages in sexual intercourse with a female without her consent” (emphasis provided).
On its face, this gender specific statute holds that only a male can commit the crime of sexual misconduct. Clearly, as the defendant argues, the statute does discriminate on the basis of sex. The issue to be resolved by this court is whether the discriminatory treatment of this statute, which burdens only males and not females, is violative of defendant’s equal protection.
In addressing an equal protection claim, the initial decision must involve a determination as to the correct standard of review (Montgomery v Daniels, 38 NY2d 41). If, as in this instant case, neither a fundamental right is abridged nor a suspect classification was created by the statute, the statute will be sustained if it bears a reasonable relationship to a legitimate legislative objective (Maresca v Cuomo, 64 NY2d 242, 250 [1984], appeal dismissed 474 US 802 [1985]).
*460 As the Court of Appeals stated in People v Liberta (64 NY2d 152, 168, 170, cert denied 471 US 1020):
"A statute which treats males and females differently violates equal protection unless the classification is substantially related to the achievement of an important governmental objective (Caban v Mohammed, 441 US 380, 388; Craig v Boren, 429 US 190, 197; People v Whidden, 51 NY2d 457, 460, app dsmd 454 US 803) * * * The People bear the burden of showing both the existence of an important objective and the substantial relationship between the discrimination in the statute and that objective (Wengler v Druggists Mut. Ins. Co., 446 US 142, 151-152; Caban v Mohammed, 441 US, at p 393, supra) * * *
"To meet their burden of showing that a gender-based law is substantially related to an important governmental objective the People must set forth an ' "exceedingly persuasive justification” ’ for the classification (Mississippi Univ. for Women v Hogan, 458 US 718, 724; Kirchberg v Feenstra, 450 US 455, 461), which requires, among other things, a showing that the gender-based law serves the governmental objective better than would a gender-neutral law (Orr v Orr, 440 US [268], at pp 281-282).”
The People have not met their burden in this instance. The People make no attempt to defend the statute directly and, in reliance on Liberta (supra), only contend that the statute is constitutional or, if it is challenged, that the Court of Appeals in Liberta indicated its preference to cure gender specific statutes as opposed to invalidating them completely.
As the Court noted in Matter of Jessie C. (164 AD2d 731, 734 [4th Dept 1991]), when analyzing this same statute before rendering it unconstitutional: "Assuming, nevertheless, that the prevention of early [teenage] pregnancy is an important governmental objective of this statute (see, People v Whidden, 51 NY2d 457, 461, appeal dismissed 454 US 803 * * *), petitioner has failed to demonstrate that this objective can be better served by a gender-specific law than a gender-neutral law. Penal Law § 130.20 (1) proscribes both forcible and non-forcible sexual intercourse * * * Insofar as nonforcible sexual intercourse is concerned, [the People have] failed to present any cogent reason why deterring only the male would further the prevention of [teen] pregnancy better than imposing a deterrent sanction upon both participants.”
. Logic would dictate that, if it was the Legislature’s intent when enacting Penal Law § 130.20 to attempt to prevent teen *461 age pregnancies by curtailing sexual activity of teenagers, such intent would be better implemented by a gender-neutral statute than by one that only burdens males. Such a gender-neutral statute should be an even stronger deterrent in that it should cause teenage females — who are the persons who can become pregnant — to stop and think before engaging in sexual intercourse with their male counterparts since the females can also be prosecuted for their conduct.
As it stands, the only persons "benefitted” by the gender exemption of this statute are females under the age of 18, the very class the statute was enacted to protect.
We concur with the rationale set forth in Matter of Jessie C., when the Court stated: "We find no substantial relationship between the objective of preventing pregnancy and a statute that permits 17-year-old females and 16-year-old males, or females under 18 and younger male victims, to engage in non-forcible sexual intercourse without criminal sanction.” (Supra, at 734.)
Moreover, if the Court of Appeals determined that a gender-neutral law "would indisputably better serve, even if only marginally, the objective of deterring and punishing forcible sexual assaults” (People v Liberta, 64 NY2d 152, 170, supra), then the same type of law would also better suit a case where the sexual activity was mutual, consensual, and nonforcible.
Moreover, it should be noted that, in 1987, the Legislature gender-neutralized the statutory rape statutes (see, L 1987, ch 510).
Penal Law § 130.05 (3) (a) holds that
"[a] person is deemed incapable of consent when he is:
"(a) less than seventeen years old”.
Unlike section 130.20, section 130.05 is gender-neutral, referring to both males and females. When combined with section 130.20 and applied to the case at bar, it holds that not only defendant’s 15-year-old girlfriend, but defendant himself, are not capable of consensual sexual intercourse since both are under the age of 17. Therefore, while both participants herein, because of age, are deemed incapable of giving consent, only the defendant, by the mere fact of his gender, can be held criminally liable for "nonconsensual” sexual conduct.
Accordingly, to the extent that section 130.20 of the Penal Law exempts females, we find that it violates the equal protection mandated by the United States and New York Constitutions.
*462 While we find the sexual misconduct statute to be unconstitutionally defective because of its underinclusion of females, a court may either strike the statute, thereby rendering it inapplicable to everyone, or extend the coverage to those formally excluded (People v Liberta, 64 NY2d 152, 170, supra; Matter of Jessie C., 164 AD2d 731 [4th Dept 1991], supra; Hope v Perales, 150 Misc 2d 985 [NY County 1991]). The task now "is to discern what course the Legislature would have chosen to follow if it had foreseen our conclusions as to underinclusiveness” (People v Liberta, 64 NY2d, at 171, supra).
In Matter of Jessie C. (supra), the Court reviewed the history of recent and proposed changes in the Penal Law, showing: "In 1987, a proposed bill was introduced in the Senate (S 4931) that would gender-neutralize the statutes proscribing sexual misconduct and rape * * * (Penal Law §§ 130.20,130.25, 130.30). The proposal was amended, however, by deleting the sexual misconduct statute, and as enacted, the bill neutralized only the rape statutes.” (Supra, 164 AD2d, at 735.) While the Bill Jacket does not reveal why the Legislature omitted the sexual misconduct statute from the changes, it could only be surmised that the Legislature chose not to enact changes on that particular statute at that time. Therefore, we conclude that given the choice of striking the statute as unconstitutional or of striking only that portion of the statute which rendered it constitutionally defective by reason of underinclusion, the Legislature, as shown by its actions in 1987, would opt for striking the gender exemption. " ' "[U]nless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law.” ’ ” (People v Liberta, 64 NY2d, at 171, supra; see, Matter of Jessie C., 164 AD2d, at 734-735, supra), and "[statutes prohibiting such behavior are of the utmost importance, and to declare such statutes a nullity would have a disastrous effect on the public interest and safety” (People v Liberta, 64 NY2d, at 171, supra). "We recognize that a court should be reluctant to expand criminal statutes, due to the danger of usurping the role of the Legislature, but in this case overriding policy concerns dictate our following such a course in light of the catastrophic effect that striking down the statutes and thus creating a hiatus would have.” (Supra, at 172.) While this court is mindful of the sanctity of separation of the judicial and legislative functions, and of the policy that any rule changing or making is a function reserved for the exclusive domain of the Court of Appeals (see, People v Keta, 165 AD2d 172 [1991]), the *463 appropriate remedy herein is to strike the gender exemption and to preserve the statute.
As regards defendant’s request that his information be dismissed, while defendant has been successful in his constitutional challenge to Penal Law § 130.20, such an amendment to the statute would not change the fact that defendant has, in fact, violated said Penal Law. Therefore, we conclude that dis-m'ssal of the charge against defendant is not warranted or required by the striking of the gender-specific exception in the statute.
Although persons under 17 years of age are deemed incapable of consenting to sexual intercourse (Penal Law § 130.05 [3] [a]) and cannot be subjected to penal sanctions for their conduct (People v Fielding, 39 NY2d 607, 611; People v Facey, 115 AD2d 11, 14, affd 69 NY2d 836), defendant, while under the age of 17 at the time of the act for which he was arrested, is not being considered as a victim, but as the perpetrator, and can be subjected to penal sanctions.
However, having examined all the facts and circumstances surrounding this offense and, as required by CPL 170.40, we conclude that the information against defendant must be dismissed in the interests of justice.
Under CPL 170.40, an information may be dismissed as a matter of judicial discretion "by the existence of some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant upon such accusatory instrument or count would constitute or result in injustice.” Here, the parties to the crime are a 16-year-old boy and his less than a year younger girlfriend who met in high school and learned to care for each other. All parties admit that no force was employed and that the sexual relationship between the two was consensual, even though the female participant was only 15 and, by statute (Penal Law § 130.05), technically could not consent to the sexual intercourse. Defendant, a product of a broken home, has been self-sufficient from a young age and still was able to graduate from high school at age 16 while working toward his aspirations for college. Clearly, this first time offender is not a threat to the safety or welfare of the community and the impact of the dismissal upon the confidence of the public in the criminal justice system will be minimal at most.
The court is also in possession of a pre-plea investigation report of defendant prepared by the Probation Department. After thorough investigation, it is the opinion of that Depart *464 ment that defendant is not likely to have future legal problems and that probation supervision is not indicated.
In our view, defendant’s prosecution or conviction, solely by reason of this gender-based statute, would be manifestly unfair (Matter of Jessie C., 164 AD2d 731, 736, supra) and defendant should be spared the imposition of the stigma which would attach with a conviction of "sexual misconduct” under these circumstances.
The court has reviewed the People’s other reasoning for continuing the prosecution of this defendant and, while it may be true that defendant may need some guidance in his life, probation for a sexual misconduct charge is not the appropriate avenue for that help.
Therefore, for the reasons stated above, defendant’s motion to dismiss the information against him is granted.